IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

MARIA BROWN,

        Plaintiff,        Case No.

v.

KNIGHT TRANSPORTATION
SERVICES, INC.

        Defendant.

_____/

**COMPLAINT**

After hiring Plaintiff, Maria Brown, "Ms. Brown," Defendant, Knight Transportation Services, Inc. ("Knight" or "Defendant'), terminated her after she disclosed her pregnancy and requested a reasonable accommodation for her disability. Plaintiff had a valid DOT physical at the time of her hire. Defendant required her to participate in an additional functional capacity evaluation that had physical requirements above and beyond the requirements for the position Ms. Brown held. Ms. Brown's physician refused to release her for the additional physical testing due to her pregnancy and provided lifting restrictions. Ms. Knight engaged in protected activity by disclosing her pregnancy and requesting accommodations. Knight failed and refused to enter into an interactive process to determine whether she could be accommodated, rather they immediately terminated her. Further, Defendant failed to compensate Ms. Brown for her work during the orientation program, violating the minimum wage statutes. Accordingly, Ms. Brown files the instant Complaint for violations of Title VII of the Civil Rights Act of 1964, the Tennessee Human Rights Act, the Tennessee Disability Act, the Americans with Disabilities Act and the Fair Labor Standard Act.

## PARTIES

1. Plaintiff, Maria Brown, ("Ms. Brown") is a citizen and resident of Cookeville, Putnam County, Tennessee, and a former applicant and employee of Defendant at its Lebanon, Tennessee location.

2. Defendant Knight Transportation Services Inc. is an Arizona corporation licensed to transact business in Tennessee. Its registered agent for service of process is CT Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

3. At all material times, Defendant has been an employer as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), the Tennessee Human Rights Act ("THRA"), T.C.A. §4-21-101, *et seq*., the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA"), the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12111, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

## JURISDICTION AND VENUE

4. This is an action for unlawful employment practices brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII") (Count I), the Tennessee Human Rights Act ("THRA"), T.C.A. §4-21-101, *et seq*. (Count II), the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA") (Count III), the Americans with Disabilities Act 42 U.S.C. §§ 12101 *et. seq*. ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA") (Count IV) and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

5. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

6. Plaintiff complied with all conditions precedent to the filing of her claims pursuant to 42 U.S.C. § 12101 *et. seq*, to wit: a charge of discrimination was filed with the Equal

Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice; the EEOC issued Plaintiff a Notice of Right to Sue and this action was commenced within 90 days of receipt of the EEOC's Notice of Right to Sue.

7. Plaintiff brings this action against Defendant for its unlawful failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201-219 (the "FLSA").

**FACTS**

8. Ms. Brown, an experienced driver with over twelve years of experience, was hired by Knight Transportation in September 2021.

9. Mr. Brandon Stover had a position at Knight as a driver and he recommended Ms. Brown for the position.

10. Ms. Brown applied to Knight on September 18, 2021, through their website. At the time of her application, Ms. Brown had a valid Department of Transportation ("DOT") physical.

11. At the time of her application to Knight, Ms. Brown was pregnant. Ms. Brown had complications to her pregnancy which included, but were not limited to, evidence of blood and/or protein in her urine, which is an indicator for several pregnancy-related conditions including pre-eclampsia, eclampsia, and others.

12. Ms. Brown is a qualified individual with a disability under 29 C.F.R. §1630.2(h)(1) in that she had a physical impairment that substantially limited one of more of her major life activities and/or she was regarded as having such an impairment. Plaintiff's condition affected her reproductive, skeletal, muscular and gastrointestinal systems. Ms. Brown was substantially limited in the major life activities of lifting, banding, standing and working.

13. On September 20, 2021, Ms. Brown received an offer letter from Knight.[1]

14. In her online application, Ms. Brown listed the driving positions she held previous to applying for work with Knight and for which she had performed driving duties within the past 12 month period, as requested by the application.

15. On information and belief, Ms. Brown had worked for employers previously who continued to list her as a current driver, although she had not performed work for them in the previous twelve months.

16. Knight hired Ms. Brown for a position as a "no touch freight," driver, which meant she would drive the truck but have no responsibility to load, unload the freight, or hook any trailers together. A "no touch freight" driver might occasionally have to disconnect a trailer, however, that procedure does not require any significant lifting or pulling.

17. Ms. Brown attended an in-person orientation for drivers on September 20, 2021. At the orientation, she was notified that she would need to pass another DOT Physical and an additional company-specific physical test, a functional capacity test or "FCE."

18. Although Ms. Brown had a current valid DOT physical, Knight required that she retake the DOT physical along with their company-specific additional physical test, the FCE.

19. Ms. Brown passed the DOT physical.

20. Prior to administering the second company-specific physical or FCE, which would have required Ms. Brown to pull 120 pounds and lift 65 pounds, the individual administering the physical, aware that Ms. Brown was pregnant, recommended that she get permission from her OB/GYN provider to take the additional test required by Knight.

---

[1] Knight, in its response to inquiry from the EEOC, claims that Ms. Brown was never hired and was only given an "conditional offer letter." Ms. Brown disputes this, however, assuming arguendo that Ms. Brown was not hired, she makes a claim for failure to hire based on sex, disability, and retaliation.

21. The FCE, which is not a requirement for DOT drivers, required test takers to pull 120 pounds and lift 65 pounds.

22. Ms. Brown spoke with her doctor and her doctor advised her not to take the additional physical test and would not sign a release for the additional physical testing with those lifting requirements.

23. In essence, Ms. Brown's doctor gave her lifting restrictions due to her pregnancy. Ms. Brown communicated the lifting restrictions to Knight. Specifically, she told Knight's recruiter that due to her pregnancy and pregnancy-related conditions, that her doctor would not release her to take the additional physical testing with the requirements of pulling 120 pounds and lifting 65 pounds.

24. Ms. Brown asked whether she could take other portions of the test but not the portions that required the pulling and lifting. The recruiter told her that she could not and told her that she could no longer work at Knight, and to reapply when she was not pregnant.

25. Ms. Brown specifically complained to the recruiter that she was being discriminated based on her sex and pregnancy.

26. Ms. Brown was then referred to another employee of Knight, who requested that she provide a doctor's note.

27. On September 24, 2021, Ms. Brown provided a note from her doctor. She emailed Jessica Igharo at Knight and asked whether they had received the doctor's note. Ms. Igharo emailed back on September 24, 2021 and confirmed receipt of the letter.

28. The letter from Ms. Brown's doctor stated that she had passed the DOT physical and could perform all functions of the driver position while pregnant. The position did not require pulling 120 pounds or lifting 50 pounds.

29. After returning the doctor's note Ms. Brown did not hear back from Knight and was not placed on an assignment. Although she attended orientation, Ms. Brown was not paid for that time.

30. On information and belief, there were other positions that did not require lifting.

31. On information and belief, other, non-pregnant employees with work restrictions were accommodated.

32. At no time did anyone Knight engage in an interactive process with Ms. Brown to determine whether her disability could be accommodated.

33. Ms. Brown was told that the reason she was not hired was due to her pregnancy and her inability to take and pass the FCE.

34. Further, after her termination, Mr. Stover, spoke with the Lebanon Terminal Manager at Knight regarding Ms. Brown's termination. During the call, the Terminal Manager admitted that Ms. Brown was not hired because she could not pass the lifting requirements of Knight's FCE due to her doctor's restrictions.

35. The Terminal Manager admitted during the call that Knights' FCE was outside of and more stringent than the DOT requirements.

36. Ms. Brown was never told of any other reason for her termination.

37. Ms. Brown was treated poorly as compared to other similarly situated non-pregnant individuals.

38. For the first time, during the EEOC investigation, Knight alleged that Ms. Brown was not terminated for her pregnancy and inability to perform the FCE, but because she had worked for more than five employers in the previous twelve months. This allegation is untrue and is a pretext for discrimination and retaliation.

39. Further, other non-disabled, non-pregnant drivers who worked for five or more

other employers in the previous twelve months, including Mr. Stover, had been hired.

## Count I
### Violation of Title VII- Sex Discrimination/Retaliation

40. Plaintiff restates and incorporates herein the foregoing paragraphs.

41. Title VII defines "because of sex" or "on the basis of sex" as follows:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e–2 (h) of this title shall be interpreted to permit otherwise.

42 U.S.C. § 2000e(k).

42. Plaintiff was subjected to disparate treatment in the terms and conditions of her job in the Defendant's workplace because of her sex, female.

43. Plaintiff was subject to disparate terms and conditions of employment that other similarly situated males were not subject to.

44. Plaintiff was qualified for her position.

45. Plaintiff suffered adverse employment actions as a result of discrimination on the basis of sex, including, but not limited to different terms and conditions of employment, retaliation for requesting an accommodation for her pregnancy, and eventually the loss of her job than similarly situated non-pregnant employees.

46. Plaintiff engaged in protected activity under Title VII by notifying her employer of her pregnancy and requesting accommodations due to her pregnancy.

47. After she engaged in protected activity under Title VII, defendant retaliated against her by terminating her.

48. Other non-pregnant employees who were similarly situated to Ms. Brown were not terminated.

49. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, inconvenience, lost earnings and benefits.

50. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count II
## Violation of THRA- Sex Discrimination/Retaliation

51. Plaintiff restates and incorporates herein the foregoing paragraphs.

52. Plaintiff was subjected to disparate treatment in the terms and conditions of her job in the Defendant's workplace because of her sex, female.

53. Plaintiff was subject to disparate terms and conditions of employment that other similarly situated males were not subject to.

54. Plaintiff was qualified for her position.

55. Plaintiff suffered adverse employment actions as a result of discrimination on the basis of sex, including, but not limited to different terms and conditions of employment, retaliation for requesting an accommodation for her pregnancy, and eventually the loss of her job than similarly situated non-pregnant employees.

56. Plaintiff engaged in protected activity under Title VII by notifying her employer of her pregnancy and requesting accommodations due to her pregnancy.

57. After she engaged in protected activity under Title VII, defendant retaliated against her by terminating her.

58. Other non-pregnant employees who were similarly situated to Ms. Brown were not terminated.

59. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, inconvenience, lost earnings and benefits.

60. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count III
## Violation of TDA- Disability Discrimination

61. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

62. Plaintiff was disabled as defined by the TDA.

63. Plaintiff was a qualified individual with a disability and/or regarded as disabled.

64. Defendant discriminated against Plaintiff on the basis of her disability in violation of the TDA that culminated in her termination.

65. Plaintiff was terminated because of her disability, and/or in retaliation for her engagement in protected activity by providing a medical excuse, and/or because she was regarded as disabled.

66. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

67. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count VI
## Violation of ADA- Disability Discrimination

68. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

69. Plaintiff was a qualified individual with a disability.

70. Defendant discriminated against Plaintiff on the basis of her disability in violation of the ADA that culminated in her termination.

71. Plaintiff could perform the essential functions of her job with reasonable accommodation. Plaintiff made requests for reasonable accommodation, including, but not limited to, requesting to have lifting restrictions related to her disabilities.

72. Plaintiff was terminated because of her disability and/or in retaliation for her requests for the reasonable accommodation of time off, and/or because she was regarded as disabled.

73. Plaintiff's termination was because of her disability and/or because she was regarded as disabled.

74. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

75. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count V
## Violation of FLSA- Failure to Pay Minimum Wage

76. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

77. This is an action for unpaid wages, liquidated damages, attorneys' fees, costs, and interest under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. for Defendants' failure to pay Plaintiff all earned minimum wages.

78. The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Ark Best Freight Sys. Inc., 450 U.S. 728, 739 (1981). Under the FLSA, employers must pay all non-exempt employees a minimum wage of pay for all time spent working during their regular 40-hour workweeks. See 29 U.S.C. § 206(a).

79. Plaintiff brings this action against Defendants for its unlawful failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201-219 (the "FLSA").

80. Plaintiff was hired and performed work for Defendant during its "orientation" period.

81. Defendant failed to compensate Plaintiff for the work performed during "orientation."

82. As a result, Plaintiff earned no wages for her work and Defendant has not met its minimum wage obligations owed to Plaintiff.

83. Defendant knew that – or acted with reckless disregard as to whether – its failure to pay Plaintiff at least $7.25 per hour in any given workweek would violate federal law, and Defendant was aware of the FLSA minimum wage requirements during Plaintiff's employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

84. Plaintiff is therefore entitled to judgment in her favor for compensation for the unpaid minimum wages, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

## RELIEF REQUESTED

Plaintiff respectfully requests:

1. A jury trial;

2. Judgment in favor of Plaintiff and against Defendant on all counts in this action;

3. Back pay and damages for lost benefits;

4. Reinstatement or front pay;

5. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

6. Punitive damages, where available;

7. Liquidated damages;

8. Attorneys' fees and expenses;

9. Prejudgment interest and, if applicable, post-judgment interest; and

10. Such other and further legal or equitable relief to which she may be entitled.

Respectfully submitted,

Hunter Law Firm PLLC

*/s Anne Bennett Hunter*
Anne Bennett Hunter BPR # 022407
101 Creekside Xing, Suite 1700-307
Brentwood, TN 37027
615.592.2977
615.628.0906 Facsimile
anne@hunteremploymentlaw.com